GEORGE W. FERNSTROM, FRITZ FERNSTROM, CHARLES FERNSTROM, OLGA E. JACKSON, CHARLES JACKSON, SELMA CLAUSEN, JOHN CLAUSEN, and HILMA JOHNSTON, *Appellants,* vs. H. H. TAYLOR, as Receiver of the City Trust Company, as Administrator Cum Testamento Annexo De Bonis Non, Successor to Biscayne Trust Company, as Executor of the Estate of Alma Larsen, deceased, *Appellee.*

145 So. 208.

Division B.

Opinion filed January 2, 1933.

Petition for rehearing denied January 18, 1933.

Mitchell D. Price, Charles W. Zaring and Robert S. Florence, for Appellants;

S. J. Barco, for Appellee.

TERRELL, J.—Alma Larsen dies testate February 15, 1929. Her will was admitted to probate February 20, following, and in December, 1929, appellants, being collateral heirs of the testatrix, brought this proceeding to invalidate the will on the ground of undue influence and lack of testamentary capacity. The former ground was abandoned, testimony was taken and on final hearing the probate judge dismissed the proceeding. The order of the probate judge was affirmed on appeal to the circuit court and we are now called on to review their finding, the sole question presented here being one of testamentary capacity.

Appellants admit that testamentary capacity is a question of fact, on which the judgment of the trial court will not be disturbed when there is evidence to support it, even though the evidence be conflicting, but they contend that the trial court in this case misapprehended and misapplied the legal effect of the evidence as an entirety.

At the outset we may state that we perceive nothing

unnatural about the will. The testatrix was a widow in her fifty-ninth year and without children. The main devisee was her favorite nephew and the child of her sister and her husband's brother. The mere fact that other relatives were destitute or poor may give rise to a feeling that the testatrix could have made a more equitable distribution but it in nowise controls her discretion in the matter.

It would be difficult to conceive a question on which the evidence was in a state of hopeless conflict surpassing that as to the testamentary capacity of the testatrix. To support their theory of the case, the contestants allege and proffer testimony to prove that the testatrix had for some years prior to her death indulged an inordinate propensity for alcoholics to such an extent, that at the time she executed her will a state of psychosis had set in and that as a result of this condition her reason was dethroned, she knew not the state of her property or those entitled to inherit from her. It also charged that she frequently committed breaches of etiquette that no normal person would commit and as often exhibited distorted ideas about the circumstances of her relatives.

These charges are all testified to by half a dozen or more witnesses, two of whom were specialists in nervous and mental diseases of high character and qualification but they did not know the testatrix and their testimony was predicated on hypothetical questions based on the state of facts testified to by other witnesses in behalf of the contestants. Every material fact testified to in behalf of the contestants was flatly contradicted by witnesses in support of the will.

The rule appears well settled that if a testator is cognizant of the nature and extent of his property, the proper objects of his bounty and the nature of the testamentary act at the time he executes his will, the fact

that he is habitually intoxicated or uses alcohol frequently, or has even been declared an habitual drunkard does not necessarily deprive him of testamentary capacity. A like rule applies as to testamentary capacity where the ravages of disease combine with the effects of alcohol to affect the testator. One may be a physical wreck and may suffer from Bright's disease, the use of narcotics, drugs, or insomnia, and still have testamentary capacity. Page on Wills, Vol. 1, page 273.

There is no positive testimony to the effect that the testatrix in this case was mentally incapable of making her will on the date it was made or that such incapability resulted from the inordinate use of alcohol unless it may be said that the testimony of the two specialists support this conclusion. In our view, the testimony of a specialist predicated on hypothetical questions is of little or no value to establish testamentary capacity in a case of this kind. The effect of intoxicants on the physical and nervous system is as varied as the effect of diet, hardly any two human beings react from it in the same manner. Some it cheers, while others it inebriates. It sharpens the edge of some minds while others it dulls. Some it depresses while others it stimulates. Some it strikes down early while others continue its use unto old age without appreciable effects and pass away from other maladies. In some cases it produces no appreciable effect on the vital organs, while in others it produces almost instant deterioration. In the light of these facts, being the common knowledge of men of affairs, testimony elicited from a specialist predicated on hypothetical questions which are grounded on a state of facts that may have no application whatever to the subject in hand is to say the least, of very doubtful value as evidence.

The general sanity, mental alertness, shrewdness, capacity and business ability of the testatrix over the pe-

riod of many years leading up to the making of her will was testified to by almost a score of witnesses, including her personal attorney, doctors, bankers, servants, intimate friends, and the nurse who cared for her in her last illness. No better line of testimony could have been found on which to predicate sanity and as against it the appellants have not made it appear that the court below misapprehended or misapplied the legal effect of the evidence as a whole. The burden was on the contestants to overcome by a preponderance of the evidence the prima facies of the will made by the subscribing witnesses and to prove that the testatrix was mentally incapable of making a will when it was executed. Perdarvis vs. Gibb, 328 Ill. 282, 159 N. E. 353.

The judgment below is therefore affirmed.

Affirmed.

WHITFIELD, P.J., AND DAVIS, J., concur.

BUFORD, C.J., concurs in the opinion and judgment.

Filed under Rule 21 A.