**IN RE: ESTATE OF ALICE BELL CARNEGIE, Deceased**

13 So. (2nd) 299                     January Term, 1943
May 11, 1943                              Division A
Rehearing Denied May 19, 1943

*Carroll Dunscombe,* for appellants.

*Jos. D. Farish* and *Evans Crary,* for appellee.

TERRELL, J.:

Alice Bell Carnegie died testate in Lakewood, Ohio, February 2, 1941. Her will was duly probated in Martin County, Florida, and relatives of the deceased seasonably filed their petition in the probate court to revoke the probate of the will. This petition was denied and that order was on appeal affirmed by the circuit court. The order of the circuit court was brought here for review.

In the petition to revoke the probate, it was contended that the probate court of Martin County was without juris-

diction of the res because the testatrix was a citizen of Pennsylvania at the time of her death and that at the time the will was executed, she lacked mental capacity to make a will.

From these two propositions, resourceful counsel for appellants have extracted thirteen questions, some of which were apparently raised for the first time in this Court and while we fail to detect merit in any of them, they will all be comprehended in what we shall say on the two propositions adjudicated by the probate court.

On the question of jurisdiction, the record shows conclusively that the testatrix died while she was visiting a sister in Lakewood, Ohio, but that she had purchased a home in Florida, had moved her residence to this State, and had actually lived in the home here almost a year after announcing that she had moved her residence to Florida. The evidence which attempts to rebut this is negative, inconclusive, and unconvincing.

On the question of lack of mental capacity to make a will, there is some evidence which tends to show that the testatrix was mentally sick in 1936, approximately five years before her death, that she drank to excess, and that she was "queer" and belonged to the class known as "maniac-depressive" which the witness defined as those who suffer from hallucinations but may have lucid intervals in which they will be perfectly normal. The evidence as to this was inconclusive and unsatisfactory and all of it related to circumstances affecting the testatrix five years or more before her death.

None of these alleged aberrations are such as point to a diseased mind. This thing of who is "queer" and when, depends on whom you ask. One might act "queer" when he got up today because of a "whiz" he was on or a gorge he imbibed last night. A full course dinner will sometimes give one hallucinations and throw in a few "queer" spells for good measure, but we would hardly say that the victim was mentally unbalanced. It is quite true that environmental conditions have much to do with both the vigor and vagaries of the mind. In fact, the last two decades have revealed more about mental behavior and psychic disturbances than all the previous ages but there is a clear line of demarcation between

mental capacity and the lack of it and the testatrix in this case was clearly on the safe side of the line. The decided weight of the evidence shows that she was sane at the time she made her will and at all times thereafter. She was engaged in the real estate and bond brokerage business, had made a trip to Alaska and around the world unattended, made out her income tax returns and performed other duties that normal people perform. One assaulting the will of another on the ground that the testatrix was "queer" or had "spells" carries the burden of showing that the "spells" and "queer" conduct were the product of a diseased mind rather than an overloaded stomach.

Testamentary capacity to make a will has reference to the condition of the testator at the time the will was executed and even though made by one insane, if made during a lucid interval, it is valid. Redfearn on Wills, 49. There is not a particle of showing here that the testatrix was not of sound mind when she made her will. The decree appealed from is affirmed.

Affirmed.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.